UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JEANNINE BUFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-419-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

In November 2014, Jeanine Buford filed a pro se complaint asserting claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671-80.[1] [Record No. 1] Buford's claims arose from events which allegedly transpired on March 10 and 11, 2013, while she was confined at the Federal Prison Camp ("FPC") on the campus of the Federal Medical Center ("FMC")-Lexington, in Lexington, Kentucky.

Buford claims that on March 10, 2013, while she was using the toilet on the second floor of the FPC, her lower back and top of her left buttock were burned by an adjacent steam pipe. [*Id*. at p. 1.] Buford claims that the pipe was positioned too close to the toilet, and that, while the pipe previously had been covered with insulation, the insulation had

---

[1] When Buford filed this action, she was confined in the FPC located in Greenville, Illinois, *see* Record No. 1-2, p. 1, but in mid-summer 2015, she was released to a half-way house under the supervision of the Bureau of Prisons ("BOP") Residential Reentry Management Field Office in St. Louis, Missouri. *See* Record No. 14, p.1, n.1. According to the BOP's website, Buford, BOP Register No. 29819-044, was released from BOP custody on December 24, 2015. *See* http://www.bop.gov/inmateloc/ (last visited on January 19, 2016). Buford was instructed to keep the Court informed of her current mailing address, *see* Record Nos. 2 and 5, but she failed to comply with this directive. The last mailing from the Court to Buford was returned as undeliverable. [Record No. 15]

-1-

shifted out of place. [*Id.*] Buford alleges that FPC-Lexington officials negligently failed to ensure that steam pipe adjacent to the toilet was covered with insulation, and that their negligence has caused her to experience pain, suffering, permantne scarring and emotional distress.

On May 2, 2014, the BOP received from Buford a claim for the injuries outlined above pursuant to 28 U.S.C. § 2671. [Decl. of Joshua Billings, Record No. 8-2] She sought $50,000 in punitive damages and $25,000 in compensatory damages for future cosmetic surgery. [*Id.*]

In a prior Order, the Court directed the United States to respond to Buford's claim. [Record No. 5] The United States has done so by filing a motion to dismiss or, in the alternative, for summary judgment. [Record No. 8] Buford has responded and the United States has filed a reply [Record Nos. 10, 12]. The matter is now ripe for review.

**I.**

Liability under the FTCA is governed by state law. Therefore, the United States may be held liable only if the conduct complained of amounts to negligence in accordance with the law of the place where the act or omission occurred. *See Rayonier Inc. v. United States*, 352, U.S. 315 (1957). Because the alleged negligence in Buford's Complaint occurred in Kentucky, Kentucky tort law applies here.

The United States argues that Buford has failed to prove the four elements of a negligence claim under Kentucky common law, which are: 1) duty of care, (2) breach of that duty, (3) actual injury, and (4) that the injury was proximately caused by the negligence. The government contends that, by covering the radiator pipe with insulation, it fulfilled the duty to Buford under Kentucky state law, which was to exercise reasonable and ordinary care to

prevent any foreseeable injury. The government contends that, in taking that preventative action, prison camp officials exercised reasonable and ordinary care to prevent inmates (including Buford) from being burned by the hot pipe.

Next, the United States asserts that Buford provides no evidence showing that prison camp officials breached any duty to provide reasonable care to her, or that they did anything to cause her injury. The United States argues that Buford has presented no evidence showing that the FMC-Lexington staff knew that that the insulation had been cut or removed from the radiator pipe prior to the date of Buford's injury, or that the prison staff had a duty to discover that the insulation had been moved from the pipe. It also contends that Buford has asserted only broad and conclusory claims of negligence which, at the summary judgment stage, are insufficient to establish either that FPC-Lexington officials were aware that the insulation had been removed from the pipe or that they had a *duty* to discover that the insulation had been removed.

The government acknowledges that, under *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013), a condition that is "open and obvious" does not eliminate a landowner's duty to maintain premises in a reasonably safe condition or relieve the landowner of a duty to warn or eliminate unreasonably dangerous conditions to invitees. *Id*. at 907, 909. However, it cites the holding in *Greater Louisville First Fed. Sav. & Loan Ass'n. v. Stone*, 242 S.W.2d 739 (Ky. App. 1951), for the proposition that an uncovered radiator pipe is "a thing in common use" and "uninsulated radiator pipes exist everywhere" *id*. at 741. It further asserts that, under *Shelton*, a radiator pipe would be considered an "open and obvious" danger. Further, the government emphasizes Buford indicates in her Complaint that: (1) she was well aware of the location of the hot water pipe before she sat on

the toilet, and (2) the pipe had previously been covered with insulation. Thus, the government contends that by initially wrapping the radiator pipe in insulation, prison camp officials took reasonable, precautionary steps to minimize the risk posed by the radiator pipe, and did not breach its duty to exercise reasonable care.

The United States also contends that Buford has failed to offer any evidence to demonstrate that prison camp officials took any action which actually *caused* her injury. More specifically, it argues that the covert removal of the insulation covering the pipe by an unknown third party was the direct and proximate cause of Buford's bodily injury and *not* the actions of prison camp officials. As a result, *but for* the third party's unforeseen actions, Buford would not have sustained any injury. The government argues that, under the holding of *NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564 (Ky. App. 1993), the existence of a superseding or intervening cause (such as the removal of the insulation covering the pipe in this case) breaks the chain of causation and removes any liability under state law, and hence, under the FTCA.

Finally, the United States argues that, even assuming Buford had established breach of the duty care owed to her **and** that the breach was the direct and proximate cause of her alleged injuries, Buford's injury was, at best, *de minimis* which does not entitle her damages under the FTCA. The government also contends that a *de minimis* injury does not entitle Buford to recover damages for emotional or mental distress, citing 28 U.S.C. § 1346(b)(2)

which requires a prisoner to demonstrate that he or she sustained an actual physical injury to recover damages for mental distress.[2]

Regarding the extent and severity of Buford's first degree burn, the government notes that the medical dictionary defines a first degree burn as a "superficial burn in which damage is limited to the outer layer of the epidermis and is marked by redness, tenderness, and mild pain. Blisters do not form and the burn heals without scar formation. A common example is a sunburn." The government argues that Buford's burn was similar to a sunburn which can be treated with home remedies. In support, the United States has submitted the sworn Declaration of Cristal Miller [Record No. 8-3], the Physicians' Assistant ("PA") and Mid-Level Practitioner ("MLP") at FMC-Lexington[3] who was directly involved with Buford's medical treatment in March 2013, and who has access to Buford's medical records at FMC-Lexington. [*Id*., p. 1, ¶¶ 1-3]

Miller states that, on March 10, 2013, Buford reported to the medical staff that when she sat on a toilet, she made physical contact with a hot pipe that runs adjacent to the toilet and that the pipe burned her skin. [*Id*., p. 2 ¶ 4] The primary burn area measured one inch by five inches and the smaller burn area measured one inch by one inch; the two areas were cleaned and a dressing was applied; and Buford was provided with supplies to change the dressing after she showered. [*Id*.] On March 11, 2013, Buford reported to the medical staff, who noted that no signs of blistering and ". . . healthy pink skin in the center area of the burn,

---

[2] The government notes that the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), contains a similar requirement that a prisoner who seeks damages for mental distress in a civil rights proceeding must demonstrate that he or she sustained a physical injury. [Record No. 8, p. 12]

[3] Miller explains that she provides primary health care to patients at FMC-Lexington, which includes triage, clinical encounters, managing chronically ill inmates, emergency medical and dental care, medication administration, and patient education. [*Id*., p. 1, ¶ 2]

with dry sloughing skin on the edges with some clear drainage." [*Id*., ¶ 5] After dressing the wound, the medical staff gave Buford a prescription for Silvadene, instructed her to apply it twice daily, and provided her supplies to change the dressing at night for the next four days. [*Id*.]

When Buford reported to medical staff to have the dressing changed and to have the wound checked on March 12, 2013, she stated that she had been able to change her bandage. [*Id*. p. 3, ¶ 6] Miller states that on that date, ". . . the wound was improving with pink granulating tissue and there were no signs of drainage." [*Id*.] When Buford reported to medical staff for a dressing change on March 13 and 14, 2013, the staff noted on both dates that the wound was healing well, and further noted on March 14, 2013, that ". . . keloids were not present, indicating that the wound would not produce a keloid scar." [*Id*., ¶¶ 7-8] Buford did not appear for her follow-up appointment the next day. After March 2013, she did not report to the prison medical staff with any additional complaints or issues. [*Id*., ¶ 9]

In response, Buford submitted a one-page letter [Record No. 10] in which she essentially relies on the information and allegations contained in her Complaint. Buford states that she has ". . . given very explicit details regarding [her] claim and as such please proceed accordingly with my case." [*Id*.] The United States replies that, because Buford is the non-moving party, she must come forward with specific facts that demonstrate the existence of a genuine issue of fact, but that Buford has instead relied on the conclusory allegations set forth in her Complaint. [Record No. 12] The government contends that Buford has produced no probative evidence that disputes its position on the issues of the duty of care owed under Kentucky law, breach of that duty, causation, or damages. [*Id*.]

## II.

Because the United States has submitted sworn declarations and other materials outside of the pleadings, the Court will treat the motion as seeking summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999); *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993); *Smith v. The Cheesecake Factory Restaurants, Inc.*, No. 3:06-00829, 2010 WL 441562, at* * 3–4 (M.D. Tenn. Feb. 4, 2010) (court converted motion to dismiss to motion for summary judgment where both parties relied on proof that fell outside pleadings). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341–42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the nonmoving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The United States is not required to submit evidence in support of its assertion. Instead, it need only point to the absence of evidence in support of a particular claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). As the responding party, Burford cannot rely upon allegations in her pleadings, but must point to evidence of record, such as affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138,

143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

A district court is not required to search the record looking for factual disputes. However, it must review all of the evidence presented by the parties in a light most favorable to the party opposing the motion, with the benefit of any reasonable factual inferences which can be drawn in his or her favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005). If the moving party demonstrates that there is no genuine dispute as to any material fact and that he or she is entitled to a judgment as a matter of law, summary judgment should be entered. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F. 2d 125, 127 (6th Cir. 1992). Further, if the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F. 2d 1439, 1444 (6th Cir. 1993).

Buford's one-page response to the United States' motion is devoid of any factual content, affidavits, sworn testimony, case law, or medical proof. Practically speaking, Buford filed no real response to the United States' motion. Notwithstanding the lack of a substantive response, this Court must still review the evidence presented to determine if the moving party has met its burden. In other words, summary judgment "by default" is not appropriate. *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'. 374, 380-81 (6th Cir. 2011) ("a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. This Court is required, at a minimum, to examine the movant's motion for summary

judgment to ensure that he has discharged that burden.") (quoting *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)).

### III.

The FTCA constitutes a limited waiver of the sovereign immunity enjoyed by the United States for claims based upon "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b); *Matthews v. Robinson*, 52 F. App'x 808 (6th Cir. 2002). The Supreme Court has held that the FTCA applies to federal inmates' claims alleging personal injuries sustained while incarcerated because of the negligence of government employees. *See United States v. Muniz*, 374 U.S. 150 (1963).

As noted above, to establish a cause of action for common law negligence under Kentucky law, a plaintiff must prove: (1) a duty of care was owed to her; (2) breach of that duty by the defendant; (3) an actual injury was suffered by the plaintiff, and (4) the plaintiff's injury was proximately caused by the defendant's negligence. The absence of any element is fatal to the claim. *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Watters v. TSR, Inc.*, 904 F.2d 378 (6th Cir. 1990).

Here, Buford's allegations do not present a viable issue regarding whether the government failed to satisfy its duty of care as set forth in 18 U.S.C. § 4042(a)(2). That statute requires that the BOP provide for the safekeeping, care, subsistence, and protection of its prisoners. *See* 18 U.S.C. § 4042(2). In *Montez ex rel Hearlson v. United States*, 359 F.3d 392 (6th Cir. 2004), the Sixth Circuit noted that, because § 4042 uses the word "shall," the BOP has a mandatory duty to provide for the "safekeeping" and "provide for the protection" of federal

inmates, but that the duty is of a broad and general nature. *Id*. at 396. It explained that "BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish these objectives." *Id*. at 397; *see also Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.").

In her FTCA administrative claim [Record No. 8-1], Buford asserted:

> While Buford was using the single man bathroom she was burned by an exposed hot water pipe that was positioned too close to the toilet. **The pipe was only partially covered by insulation and the insulation was shifted out of p[l]ace**.

[Record No. 8-2, p. 8 (emphasis added)]

In her Complaint, Buford claimed:

> I removed my pants and proceed to sit on the toilet, but before I sat all the way down, my lower back and top of my left buttock was burned **on a hot water pipe that was not covered in insulation because it appeared the insulation had been cut**. The pipe is located extremely too close to the toilet.

[Record No. 1, p. 1, ¶ 4 (emphasis added)]

Under Kentucky law, "ordinary care" must be taken to "prevent any foreseeable injury." *Watters*, 904 F.2d 378 at 380 (quoting *M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974)). "[T]he law imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan County v. Sloas*, 201 S.W.3d 469, 478 (Ky. 2006) (citing *Lamb v. Clark*, 282 Ky. 167, 138 S.W.2d 350, 352 (1940))

Buford's version of the events changed somewhat between May 2, 2014 (the date on which the BOP received Buford's FTCA administrative claim), and November 12, 2014 (the date on which Buford filed her complaint in this action). In her FTCA claim, Buford stated that the insulation had "shifted out of place," while in her complaint, she alleged that ". . . it appeared the insulation had been cut." But even so, Buford consistently indicated in both filings that, prior to sustaining her burn injury on March 10, 2013, the radiator pipe had, at some point prior to March 10, 2013, been covered with insulation, meaning that at some point prior to March 10, 2013, someone on the FPC-Lexington staff had taken an affirmative step to wrap the pipe with insulation and prevent anyone from being burned.

Applying the law of reasonable and ordinary care which Kentucky jailers must observe and follow, the record establishes that, by covering the radiator pipe, FPC-Lexington officials complied with their duty to "provide for the safekeeping, care, subsistence, and protection of its prisoners" in compliance with § 4042(2). By taking that precautionary action of wrapping the pipe with insulation, FPC-Lexington officials took reasonable steps to insure that inmates using the toilet in the single man's bathroom on the second floor of the FPC-Lexington would not be scalded or burned by excessively hot water. Therefore, they uded due care to prevent harm. The fact that Buford sustained a burn wound on one occasion does not alter this conclusion. *See Wilson v. United States*, No. 5:13-CV-131-JMH, 2014 WL 3866047, at *4 (E. D. Ky. Aug. 6, 2014) (granting summary judgment for the United States in an FTCA action where the record showed that federal prison officials used reasonable care to protect inmates from being scalded by excessively hot water, and that they acted with "due care.")

Further, as the United States correctly notes in its motion, Kentucky courts have found that an uncovered radiator pipe is "a thing in common use" and that "uninsulated radiator pipes

exist everywhere." *Greater Louisville First Fed. Sav. & Loan Ass'n. v. Stone*, 242 S.W.2d 739, 741 (Ky. App. 1951).  The government also correctly argues that under the analysis set forth in *Shelton*, 413 S.W.3d at 907, 909, a radiator pipe would be considered an "open and obvious" danger, and that by placing insulation over or around the radiator pipe, prison officials took reasonable, steps to eliminate or minimize the risk posed by the radiator pipe.  *See Dishman v. C&R Asphalt, et al.*, 460 S.W.3d 341, *7 (Ky. App. 2014) (affirming circuit court's summary judgment where the defendants had, under the *Shelton* analysis, taken every precaution and warned the plaintiff of an open and obvious danger.)  Again, by wrapping the radiator pipe in insulation, FPC-Lexington officials took a reasonable and precautionary step to prevent harm from that pipe, and did not breach the duty of reasonable care owed to Buford.

Next, Buford has failed to produce any evidence indicating that the actions of FPC-Lexington officials were the actual, proximate and direct *cause* of the burn injury which she sustained on March 10, 2013.  The United States correctly cites Kentucky law governing superseding causes in negligence cases as set forth in *NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564 (Ky. App. 1993).  In *NKC Hospital*, the Court of Appeals of Kentucky explained that a superseding cause has the following attributes:  1) an act or event that intervenes between the original act and the injury; 2) the intervening act or event must be of independent origin, unassociated with the original act; 3) the intervening act or event must, itself, be capable of bringing about the injury; 4) the intervening act or event must not have been reasonably foreseeable by the original actor; 5) the intervening act or event involves the unforeseen negligence of a third party [one other than the first party actor or the second party plaintiff] or the intervention of a natural force; 6) the original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create a negligent condition or

occasion; the distinction between a legal cause and a mere condition being foreseeability of injury.  [*Id.*, at 568].

In her Complaint, Buford alleged:

7.  On March 10th 2013, and March 11th, 2013 I advised the guard on duty, the 1st PA who examined me, and PA Crystal Miller to have the pipe covered with installation before it burns someone else.  They advised me they would advise the Safety Department.

8.  Several days went by with the pipe still uncovered before they had the installation re covered over the hot water pipe.

9.  I noticed only a few short weeks after that, someone had cut the installation again on the exact same water pipe, and it was exposed again to burn someone else, and the Safety Department failed to repair it right away again.

[Record No. 1, p. 1, ¶¶ 7-9]

Thus, Buford asserts that an unknown third party cut or removed the insulation which had been wrapped around the subject pipe.  But other than the broad, conclusory allegations set forth in her own Complaint, Buford produces no sworn testimony, affidavits, or other probative evidence which demonstrates -- or even suggests -- that any federal official at FPC-Lexington cut or removed the insulation or that FPC-Lexington officials knew that some *other* person (such as another inmate) had cut or removed the insulation from the radiator pipe and that they ignored that knowledge prior to Buford's alleged injury occurring on March 10, 2013.

As previously discussed, the United States owed only a duty of reasonable care to Buford to protect her from harm.  It fulfilled that duty by wrapping the radiator pipe with insulation prior to March 10, 2013.  The BOP must use ordinary care under § 4042 to protect prisoners from unreasonable risks, but it is not required to provide prisoners with a risk-free environment. *Fleishour v. United States*, 365 F.2d 126, 128–29 (7th Cir.), *cert. denied*, 385 U.S. 987 (1966); *see* also *Flechsig*, 786 F.Supp. at 649-50 (holding that the BOP's duty under § 4042 is not

absolute; its duty depends on the reasonableness under the circumstances); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa.1987); *Artis v. Petrovsky*, 638 F. Supp. 51, 53 (W.D. Mo.1986). Contrary to Buford's construed argument in her Complaint, the government is not strictly liable for an unknown third party's actions of cutting or removing the insulation from the radiator pipe; such action would be an unforeseen and unanticipated action of "independent origin." Based on the analysis set forth in *NKC Hospitals*, the elements of a superseding cause exist in this case. "But for" the alleged cutting or removal of the insulation by an unknown third party, Buford would not have sustained an injury on March 10, 2013.

Buford alleged in her Complaint that the United States was ". . . negligent in failing to properly maintenance [sic] the hot water pipe installation in an area where prisoners would have skin contact with hot steam from the pipe." [Record No. 1, p. 2, ¶ 15] Those allegations were sufficient at the initial screening stage but given the United States' well-supported motion, they are inadequate at the summary judgment stage. Conclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment. *Miller v. Aladdin Temp-Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). And other than the conclusory allegations set forth in her Complaint, Buford has produced no evidence to substantiate her bald allegation that the negligence of FPC-Lexington officials was the direct, proximate cause of the burn injury which she sustained.[4]

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

---

[4] Based on the foregoing determination, the Court need not address the plaintiff's remaining claims, including whether her alleged physical injury was *de minimus*.

      1.      The United States' motion [Record No. 8] is **GRANTED**.

      2.      The claims asserted in Plaintiff Jeannine Buford's Complaint are **DISMISSED**, with prejudice.

      3.      This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 25th day of January, 2016.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge